UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SETH STERN, ANGELA BINDNER, and MARIANNE SCHMITT, on their own behalf, on behalf of all others similarly situated, and on behalf of the JPMorgan Chase Health Care and Insurance Program for Active Employees and its component Medical Plan,

Plaintiffs,

-against-

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK N.A., JPMORGAN CHASE U.S. BENEFITS EXECUTIVE, and JPMORGAN CHASE COMPENSATION & MANAGEMENT DEVELOPMENT COMMITTEE,

Defendants.

Case No. 1: 25-cv-02097 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs, current and former JPMorgan employees, bring this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs allege that Defendants breached their fiduciary duties and engaged in prohibited transactions when Defendants mismanaged the prescription-drug component of JPMorgan's self-funded employee health plan. *See* Dkt. 1 ("Compl."). The Court granted Defendants' motion to dismiss Plaintiffs' claims for breach of fiduciary duties. Dkt. 45 ("MTD Order"). Now before the Court is Defendants' motion for judgment on the pleadings on Plaintiffs' remaining prohibited transactions claims. Dkt. 55. For the reasons that follow, the Court GRANTS Defendants' motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).

# BACKGROUND

## I. Factual Allegations

Plaintiffs' pleadings assert the following facts relevant to their remaining prohibited transactions claim. The Court assumes these facts as true to decide Defendants' motion for judgment on the pleadings. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301-02 (2d Cir. 2021) ("[W]e must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party").

### A. The Plan

Plaintiffs are current and former participants in an employee health benefit plan governed by ERISA (the "Plan"). Compl. ¶¶ 13-17. Defendants sponsor and administer the Plan: JPMorgan Chase Bank N.A is the designated sponsor of the Plan and Plan employer; JPMorgan Chase & Co is also the Plan employer, *id.* ¶ 19; JPMorgan Chase U.S. Benefits Executive is the named Plan Administrator, *id.* ¶ 20; and the Compensation & Management Development Committee oversees the Benefits Executive, *id.* ¶ 22.

The Plan provides medical benefits, including prescription drug benefits, to JPMorgan employees and beneficiaries. *Id.* ¶ 17. The Plan's medical component is "self-funded," which, here, means that an employer-sponsored trust account pays all medical benefits secured by the Plan. *Id.* ¶¶ 27, 224. JPMorgan's employee contributions, employer contributions, and investment income comprise the trust account's assets. *Id.* ¶ 27.

### B. The Plan's Arrangement with Caremark

The Plan hired a third-party service provider, CVS Caremark ("Caremark"), to manage the Plan's prescription drug benefits as the Plan's pharmacy benefit manager ("PBM"). Caremark acts as the middleman between the Plan and the prescription drug providers. In that role, Caremark performs multiple services. *Id.* ¶¶ 17, 51. First, Caremark administers benefits in

real time, which means that when a Plan participant arrives at a pharmacy counter, Caremark pays the pharmacy for the drug and then bills the Plan and its participant. *Id.* ¶ 51. Second, Caremark manages the "formulary," which is the list of prescription drugs covered by the plan. Caremark organizes those drugs into more and less costly "tiers" within the formulary.[1] *Id.* ¶¶ 46, 103. Third, Caremark contracts with drug manufacturers, often to place certain drugs on that formulary in exchange for rebates. *Id.* ¶ 50. Fourth, Caremark creates networks of pharmacies that fill covered prescriptions. *Id.*; *see also id.* ¶ 103.

And as pharmacy benefit manager, Caremark obtains revenue in multiple ways. The Plan directly pays Caremark "about $3 million annually in administrative fees" and "millions more" in other fees for its services. *Id.* ¶ 17. Caremark also generates revenue through the services it provides. According to Plaintiffs, Caremark retains rebates that it receives from drug manufacturers. *Id.* And, most importantly to Plaintiffs' claims, Caremark generates revenue through a tactic called "spread pricing": Caremark pays pharmacies a low cost for a prescription drug, bills the Plan and its members a high cost for the drug, and then Caremark keeps the difference — or the "spread" — between the two costs.[2] *Id.* ¶¶ 17, 59.

**C. Financial Consequences**

Plaintiffs allege that the Plan's arrangement with Caremark caused the Plan and its members to overpay for prescription drugs. *Id.* ¶¶ 108, 245-252. According to Plaintiffs' complaint, the Plan and its members paid high drug prices to Caremark based on arbitrary benchmarks. *See id.* ¶ 139 (criticizing the estimation of prescription drug prices based on their

---

[1] The tiers range from "specialty drugs," which entail higher costs for members, to "preferred generic drugs," which typically entail low or no costs for members. Compl. ¶ 46.

[2] Defendants and Caremark estimate the price of prescription drugs based on the "Average Wholesale Price" ("AWP") of the drug. Compl. ¶139.

"Average Wholesale Price" of the drug). On average, those prices amount to 211.1% more than what pharmacies paid to acquire those prescription drugs. *Id.* ¶ 112; Reply ¶ 34. Plaintiffs alleged that, as a result, they paid higher out-of-pocket costs, such as copays and coinsurance costs, Compl. ¶¶ 3-4, 30, 221-23, 225-252, as well as higher premiums, *id.* ¶¶ 227-28.

## II. Procedural History

On March 13, 2025, Plaintiffs brought two sets of ERISA claims individually and on behalf of the Plan and all others similarly situated. *See generally id.*

First, Counts One and Two alleged that Defendants breached their fiduciary duties of loyalty and prudence under Section 404, codified at 29 U.S.C. § 1104(a)(1), and sought relief under Section 409, 29 U.S.C. § 1109(a), and Section 502, *id.* § 1132(a). *Id.* ¶¶ 264-77. Plaintiffs alleged that Defendants acted imprudently because Defendants selected Caremark as the Plan's PBM, permitted Caremark to charge high drug prices, and allowed Caremark to classify certain drugs as higher-cost specialty drugs. *See* MTD Order at 4-5. And Plaintiffs alleged that Defendants acted disloyally because JPMorgan abandoned efforts to "rei[n] in abuses by PBMs" because of its "business interests in the health care space." Compl. ¶ 10.

Second, Counts Four and Five alleged that Defendants engaged in prohibited transactions in violation of Section 406, 29 U.S.C. § 1106, and sought relief under Section 409, *id.* § 1109(a), and Section 502, *id.* § 1132(a). *Id.* ¶¶ 278-93.[3] Plaintiffs alleged that Defendants caused the Plan to engage in prohibited transactions by "retaining and continuing to contract with Caremark and by causing the Plan to repeatedly make excessive payments to Caremark." *Id.* ¶ 280.

On March 9, 2026, the Court granted in part and denied in part Defendants' motion to dismiss pursuant to Rule 12(b)(6). *See* MTD Order. Addressing its jurisdiction, the Court ruled

[3] There is no Count Three asserted in the Complaint. *See* Compl. ¶¶ 264-93.

that, while Plaintiffs' "higher premium" theory of standing was "too speculative to serve as a basis for standing," *id.* at 13, Plaintiffs' higher out-of-pocket costs constituted a non-speculative injury-in-fact, *id.* at 14-19. Next, turning to the merits, the Court dismissed Plaintiffs' fiduciary duty of prudence and loyalty claims because those claims challenged "choices made regarding the architecture of the Plan's prescription drug benefit component," which were not fiduciary actions. *Id.* at 20-27. The Court finally denied the motion to dismiss Plaintiffs' prohibited transaction claims because those claims challenged fiduciary actions and because Plaintiffs had satisfied the pleading requirements set forth in *Cunningham v. Cornell University*, 604 U.S. 693 (2025). MTD Order at 30-32.

Finally, as to Counts Four and Five, the Court ordered Defendants to file an answer to the Complaint and ordered Plaintiffs to file a reply to Defendants' answer pursuant to Federal Rule of Civil Procedure 7(a)(7). *Id.* at 34. On April 3, 2026, Defendants filed an answer to Plaintiffs' Complaint. Dkt. 51 ("Answer"). On April 27, 2026, Plaintiffs filed a reply to Defendants' Answer. Dkt. 54 ("Reply"). On June 3, 2026, Defendants filed a motion for judgment on the pleadings. Dkt. 55; Dkt. 56 ("Def. Br."). On July 10, 2026, Plaintiffs filed an opposition to Defendants' motion. Dkt. 60 ("Pl. Opp."). And on July 24, 2026, Defendants filed a reply to Plaintiffs' opposition. Dkt. 61. ("Def. Reply Br."). The motion is now fully briefed.

## LEGAL STANDARD

### I. Motion for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration adopted) (quoting *Patel v. Contemp. Classics*, 259 F.3d 123, 126 (2d Cir. 2001)). "To survive a Rule 12(c) motion, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Lively*, 6 F.4th at 301 (alteration accepted) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). Courts draw all "draw all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

Furthermore, courts may consider only "(1) the non-movant's pleadings; (2) the documents that are attached to, integral to, or incorporated by the pleadings; and (3) judicially noticeable extrinsic evidence." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 246 (2d Cir. 2024). The "pleadings" include the "complaint," the "answer to a complaint," and, "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Courts "may not resolve the motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading." *Lively*, 6 F.4th at 306; *see also id.* at 304 (holding that the district court erred when it "'supplemented' its assessment of the plausibility of [the nonmovant's] allegations on a Rule 12(c) motion with facts from the answer"). Because Defendants have moved for judgment on the pleadings, the Court considers Plaintiffs' Complaint and Plaintiffs' Reply.

## II. Prohibited Transactions

Plaintiffs' only remaining claims, Counts Four and Five, assert that Defendants engaged in prohibited transactions. Section 406 of ERISA, codified at 29 U.S.C. § 1106, "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Cunningham*, 604 U.S. at 697 (alterations accepted) (quoting *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000)).

Section 1106(a) completely bars transactions with a "party in interest" unless those transactions fall within an exception enumerated in § 1108. 29 U.S.C. § 1106(a). Section 1106(a) first creates a broad prohibition: A fiduciary "shall not cause the plan to engage in a transaction" that the fiduciary "knows or should know constitutes a direct or indirect" "sale or

exchange . . . of any property," "furnishing of . . . services," or "transfer . . . of any assets of the plan," between the plan and the "party in interest." *Id.* § 1106(a)(1)(A)-(C).

Section 1108 then lists twenty-one exemptions to this broad prohibition. *See id.* § 1108; *accord Cunningham*, 604 U.S. at 697. Relevant here is § 1108(b)(2)(A), which exempts from § 1106(a)(1)'s prohibition any transaction that involves "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2)(A). The parties dispute whether § 1108(b)(2)(A)'s exemption applies to the Plan's transaction with Caremark in this case.

The Supreme Court's recent opinion in *Cunningham v. Cornell University* guides the Court's analysis of Plaintiffs' prohibited transactions claims. 604 U.S. at 693. In *Cunningham*, the Court explained that to state a claim under § 1108(b)(2)(A), plaintiffs need only plead the basic elements of the exemption's broad prohibition. *Id.* at 702. Plaintiffs need not address § 1108(b)(2)(A)'s exemptions in their complaint, the Court reasoned, because those exemptions create affirmative defenses for Defendants. *Id.* The Court acknowledged respondents' practical concern that this lower pleading standard might "subject defendants to costly and time-intensive discovery" since "plaintiffs could too easily get past the motion-to-dismiss stage." *Id.* at 707-08.

For that reason, the Supreme Court suggested that district courts use Rule 7(a) to "screen out meritless claims before discovery." *Id.* at 708. Under Rule 7(a), "if a fiduciary believes an exemption applies to bar a plaintiff's suit and files an answer showing as much," district courts can "'insist that the plaintiff' file a reply putting forward specific, nonconclusory factual allegations' showing the exemption does not apply." *Id.* (citation modified) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). District courts "may then dismiss the suits of those plaintiffs who cannot plausibly do so." *Id.*

Here, the Court followed the Supreme Court's suggestion and ordered Plaintiffs to file the Reply to respond to the Answer pursuant to Rule 7(a). *See* MTD Order at 34. Accordingly, to decide Defendants' motion for judgment on the pleadings, the Court assesses whether Plaintiffs' pleadings — specifically, Plaintiffs' Complaint and Reply — contain "specific, nonconclusory factual allegations" that "plausibly" show that § 1108(b)(2)(A)'s exemption for reasonable and necessary transactions does not apply to the Plan's transaction with Caremark. *Cunningham*, 604 U.S. at 708 (quoting *Crawford-El*, 523 U.S. at 598); *see also Lively*, 6 F.4th at 304-06 (instructing courts to "remain within" the non-movant's pleadings).

**DISCUSSION**

For the following reasons, the Court grants Defendants' Rule 12(c) motion for judgment on the pleadings. Although the Court determines that Plaintiffs have standing, Plaintiffs have failed to state a prohibited transactions claim because they have not shown that an exemption does not apply.

**I. Standing**

To start, the Court reaffirms its earlier ruling that Plaintiffs have standing based on Plaintiffs' allegations they incurred high out-of-pocket costs. *See* MTD Order at 14-19. "[C]onstitutional standing is a jurisdictional prerequisite to suit." *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 126 (2d Cir. 2003). A plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Defendants raise two standing arguments, neither of which are persuasive.

First, Defendants argue that Plaintiffs fail to show an injury in fact because Plaintiffs "do not plausibly plead a constitutionally-cognizable overcharge injury." Def. Br. at 25. The Court

addressed and rejected this argument in its Motion to Dismiss Order. *See* MTD Order at 14-18 ("Plaintiffs also allege a personal financial loss — namely out-of-pocket overpayments for prescription drugs — as a result of Defendants' alleged fiduciary breaches. Allegations of this kind are generally sufficient to confer standing. . . . Defendants' cited cases do not compel a contrary finding here."). For the reasons discussed in the Motion to Dismiss Order, Plaintiffs' allegations that they incurred high out-of-pocket costs constitute an injury in fact.

Second, Defendants assert that Plaintiffs' out-of-pocket payments are not traceable to the prohibited transactions that Plaintiffs challenge. *See* Def. Br. at 20-25. Defendants divide Plaintiffs' claim into two parts: (1) the "Plan's payments to Caremark for administering the Plan's prescription-drug benefits *as designed*," and (2) the Plan's payments to Caremark for "setting the formulary, setting the prescription-drug pricing structure, determining pricing benchmarks, and deciding or negotiating drug costs." *Id.* Defendants observe that the second set of services involve "non-fiduciary functions that cannot form the basis of a prohibited-transaction claim," so, Defendants reason, Plaintiffs' prohibited transaction claim must only include compensation for "benefits-administration functions." *Id.* at 22. Defendants maintain that Plaintiffs lack standing because Plaintiffs have not shown that they overpaid for drugs as a result of those benefit-administration functions. *Id.*

This argument is unavailing. First, the Court has held that Plaintiffs' prohibited transaction claims challenge a fiduciary act because "[h]iring a service provider in and of itself is a fiduciary function." MTD Order at 30 (citation omitted). Second, the Court declines to divide Caremark's compensation based on the services Caremark provided: § 1108(b)(2)(A)'s "reasonable compensation" inquiry requires that "a fiduciary must consider all compensation — direct and indirect — that the party in interest receives 'in connection with' the services it provides to the plan under the contract." *Bugielski v. AT&T Servs., Inc.,* 76 F.4th 894,

911 (9th Cir. 2023) (first quoting 29 C.F.R. § 2550.408b-2(a)(3); then quoting 77 Fed. Reg. 5632, 5650 (Feb. 3, 2012)). Third, Defendants' argument "would essentially collapse the standing inquiry into the merits." *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003).

Thus, the Court reaffirms that Plaintiffs have standing. *See* MTD Order at 14-19.

## II. Failure to State a Claim

Moving to the merits, Plaintiffs have failed to state a prohibited transactions claim because Plaintiffs' pleadings do not plausibly show that the Plan's transaction with Caremark was unnecessary or unreasonable within the meaning of § 1108(b)(2)(A). As the Court's Motion to Dismiss Order explained, the Plan's retention of Caremark plausibly falls within the exemption's prohibition: Caremark is a "party in interest" because Caremark is an entity "providing services" to the Plan, 29 U.S.C. § 1002(14)(B), and the Plan's retention of Caremark exchanges property, furnishes services, and transfers plan assets, *see id.* § 1106(a)(1)(A)-(C). MTD Order at 31-32.

The Court must therefore determine whether Plaintiffs have plausibly shown that § 1108(b)(2)'s exemption applies here. *See Cunningham*, 604 U.S. at 708. In their Answer to Plaintiffs' Complaint, Defendants raise § 1108(b)(2) as an affirmative defense. Answer at 61-64. This exemption permits transactions that involve:

> Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

29 U.S.C. § 1108(b)(2)(A).

The Court begins with the "other services necessary" requirement and then proceeds to the "reasonable compensation" requirement of the exemption.

**A. Other Services Necessary**

Plaintiffs have not shown that Caremark fails to provide "other services necessary for the establishment or operation of the plan." *Id.* § 1108(b)(2)(A). Caremark provides various prescription drug benefit services, such as administering claims and managing the formulary. Plaintiffs plead no facts showing that prescription drug benefit services — the services Caremark provides — are not "services" that are "necessary for the establishment or operation of the plan." *Id.; see also* Pl. Opp. at 16-19; Reply. ¶¶ 5-10; Def. Reply Br. at 9. Accordingly, Plaintiffs have not disproved the "necessary" component of the § 1108(b)(2)(A)'s exemption.

Plaintiffs' contrary argument relies on an alternative reading of the exemption's text. Plaintiffs read the word "necessary" to modify "contracting" instead of "services." Pl. Opp. at 17. According to that reading, the Plan's contract with this particular service provider — not the services provided by that provider — must be necessary to satisfy § 1108(b)(2)(A)'s exemption. Pl. Opp. at 16-17. Then, applying that reading, Plaintiffs assert that it was unnecessary for Defendants to retain "a PBM like Caremark," Reply ¶ 10, because JPMorgan could have used a different PBM or performed PBM services on its own, *id.* ¶¶ 8-11; Pl. Opp. at 16-17. JPMorgan could have performed its own PBM services, Plaintiffs say, because JPMorgan is a "sophisticated multinational company" and as "early as 2014, the ERISA Advisory Council specifically stated that 'very large employers may conduct some of the core formulary-related PBM services in-house.'" Reply ¶ 6. Plaintiffs also point to an internal document showing that JPMorgan considered managing pharmacy benefits in- house in 2017. *Id.* ¶ 5.

Plaintiffs' interpretation of § 1108(b)(2)(A) is unpersuasive. The plain text of § 1108(b)(2)(A) teaches that only the provider's services must be necessary. "We begin our interpretation of a federal statute with the statutory text." *United States v. Maynard*, 743 F.3d 374, 378 (2d Cir. 2014) (citation omitted). A "limiting clause or phrase should ordinarily be read

as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351 (2016) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003)). Here, the limiting phrase, "necessary for the establishment or operation of the plan," directly follows the noun, "services." 29 U.S.C. § 1108(b)(2)(A). Thus, the statute's plain text instructs that "necessary" modifies "services" instead of "contracting."

Longstanding agency practice supports this interpretation of the statute's text. The Supreme Court has recognized that agency's "longstanding practice" may inform a court's "determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (citation modified). Since 1977, the Department of Labor has interpreted § 1108(b)(2)(A) to refer to services that are necessary. *See* 29 C.F.R. 2550.408b-2(b) (explaining that "a service is necessary for the establishment or operation of a plan within the meaning of section 408(b)(2) . . . if the service is appropriate and helpful to the plan obtaining the service in carrying out the purposes for which the plan is established or maintained.").

Courts largely agree that § 1108(b)(2)'s exemption requires that the service be necessary. *See, e.g., Bugielski*, 76 F.4th at 901 (stating that "a service is necessary" if it "is appropriate and helpful to the plan obtaining the service in carrying out the purposes for which the plan is established or maintained" (quoting 29 C.F.R. § 2550.408b-2(b))); *Chao v. Graf*, No. cv-N-01-0698, 2002 WL 1611122, at *13 (D. Nev. Feb. 1, 2002) ("[T]he regulations further instruct that a service is necessary where it is appropriate and helpful to the plan in carrying out its purposes." (citing 29 C.F.R. § 2550.408b-2)); *see also Acosta v. Chimes D.C., Inc.,* No. cv-15-3315, 2019 WL 931710, at *15 (D. Md. Feb. 26, 2019) (finding defendants were not liable when their "services were necessary for the operation of the Plan" under § 1108(b)(2)(A)).

Plaintiffs' remaining counterarguments fail to persuade. Plaintiffs point to the Supreme Court's passing references to "transactions that were necessary for the plan" and "reasonable

arrangements that are necessary" in *Cunningham*, Pl. Opp at 17 (quoting *Cuningham*, 604 U.S. at 700), but *Cunningham* did not consider whether "necessary" modifies "services" or "contracting" in § 1108(b)(2). Plaintiffs contend that the "necessary services" reading contravenes common law fiduciary principles, prohibits transactions that the duty of prudence bars, and could exempt transactions for unnecessary office space. *See* Pl. Opp. at 18. These observations, however, do not overcome the text's ordinary meaning. Plaintiffs cite no court that has adopted their interpretation of § 1108(b)(2)(A). The Court declines to be the first.

Accordingly, Plaintiffs' pleadings do not show that Caremark failed to provide "services necessary for the establishment or operation of the plan." 29 U.S.C. § 1108(b)(2)(A).

**B. Reasonable Compensation**

Plaintiffs have also failed to plausibly show that the Plan paid Caremark "more than reasonable compensation." *Id.* § 1108(b)(2)(A). The applicable regulations state that whether compensation is "reasonable" "depends on the particular facts and circumstances of each case." 29 C.F.R. § 2550.408c-2(b)(1). Compensation is unreasonable if it exceeds the amount that "would ordinarily be paid for like services by like enterprises under like circumstances." 26 C.F.R. § 1.162-7(b)(3); *see* 29 C.F.R. § 2550.408c-2(b)(5); *see also Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 17-cv-855 (JPO), 2021 WL 4481598, at *5 (S.D.N.Y. Sept. 30, 2021) (comparing defendants' compensation to "companies that offer similar . . . services" to determine the reasonableness of compensation under § 1108(b)(2)(A)).

According to Plaintiffs' Reply, Caremark received unreasonable compensation in the form of inflated drug prices that Caremark charged the Plan and its members. *See* Reply ¶¶ 32-38. First, Plaintiffs contend that the Plan and its members overpaid Caremark because, in a survey of 366 generic drugs on the Plan's formulary, the Plan and its members paid Caremark prices for drugs that were 211.1% higher than the average cost that pharmacies paid to acquire

those same drugs according to the National Average Drug Acquisition Cost. Reply ¶ 34f; Compl. ¶ 112. Second, Plaintiffs assert that this Plan and its members pay 2.4 times as much as another plan, the Charter Communications plan, pays for the same drugs, even though both plans use Caremark as their PBM. Reply ¶ 37; Compl. ¶ 207.

These allegations do not plausibly show that the Plan's compensation to Caremark was unreasonable. Plaintiffs do not allege that the services Caremark provides the Charter Communications plan are similar to those Caremark provides the JPMorgan Plan. *See* Reply ¶ 37; Compl. ¶ 207. Nor do Plaintiffs allege that the services Caremark provides Charter Communications could have adequately served a larger company like JPMorgan. *Compare* Compl. ¶ 108 (JPMorgan employs over "over 300,000 employees"), *with id.* ¶ 207 (Charter Communications employs "approximately 175,000 employees"). Moreover, Plaintiffs' analysis of drug prices only shows that the Plan paid more for drugs than pharmacies paid to acquire drugs from wholesalers — not that the Plan paid more than similarly situated plan members.[4] Because Plaintiffs do not allege that other pharmacy benefit managers offered similar services with lower costs to Plan members, Plaintiffs do not show that Caremark's compensation was unreasonable. *See* 26 C.F.R. § 1.162-7(b)(3); 29 C.F.R. § 2550.408c-2(b)(5).

Plaintiffs insist that Defendants bear the burden to prove that an exemption applies. Pl. Opp. at 8. Plaintiffs' Reply focuses on Defendants' failure to "establish that Caremark's

---

[4] Moreover, because Plaintiffs rely on industry-wide averages, Plaintiffs' analysis does not establish actual markup in the price Caremark charged for drugs from the price that pharmacies spent to acquire those drugs. *Cf. McCaffree Fin. Corp. v. ADP, Inc.*, No. 20-5492, 2023 WL 2728787, at *15 (D.N.J. Mar. 31, 2023) (dismissing breach of fiduciary duty claim where Plaintiffs alleged that Defendants "paid excessive administrative fees and total plan costs based on industry-wide averages" rather "than point to the fees paid by other specific plans").

compensation was 'reasonable' for purposes of this exemption" in Defendants' Answer.[5] Reply ¶ 31; *see also, e.g.*, *id.* ¶ 14 (stating that Defendants do not compare plan's pricing to other employer healthcare plans); *id.* ¶ 22 (stating that Defendants do not identify the consultant who conducted the Request for Proposal ("RFP") or offer the consultant's methodology). Plaintiffs also fault Defendants for their failure to produce various documents, such as a copy of JPMorgan's agreement with Caremark, *id.* ¶ 12, a copy of the criteria or results of the "market check" that guided the selection of Caremark, *id.* ¶ 14, a copy of the 2020 RFP and its criteria, a copy of the RFP's responses and scorecard, *id.* ¶ 23, the list of PBMs who were provided the RFP, *id.*, and the financial terms of Caremark's and other bidders' bids, *id.* ¶ 24.

Plaintiffs' argument confuses the parties' burdens. At this stage — once the district court has ordered Plaintiffs to file a reply — the Court must examine whether Plaintiffs have "file[d] a reply putting forward specific, nonconclusory factual allegations showing the exemption does not apply." *Cunningham*, 604 U.S. at 708 (citation modified). "Lower courts may then dismiss the suits of those plaintiffs who cannot plausibly do so." *Id.* Plaintiffs appear to seek documents typically obtained through discovery. *See, e.g.*, Reply ¶¶ 12, 14, 23, 24. But the Supreme Court endorsed Rule 7(a)(7) precisely so that district courts could "screen out meritless claims before discovery," *Cunningham*, 604 U.S. at 708, which, the Court recognized, could be "costly and time-intensive," *id.*; *see also id.* at 710-11 (Alito, J., concurring) (instructing courts to "strongly consider" Rule 7(a)(7) to limit unmeritorious suits at the pleading stage, given that "[d]efendants

[5] In their Answer, Defendants allege additional facts to support their contention that Caremark and the Plan's transaction was reasonable and necessary. *See* Answer ¶ 15 (alleging that contract with Caremark was financially competitive); *id.* ¶¶ 12, 15 (alleging that JPMorgan performed a "market check" of the terms of the agreement); *id.* ¶ 12 (alleging that PBM pricing was "reasonable and consistent with the market"); *id.* ¶¶ 13-14 (alleging that Defendants conducted two requests for proposals). Nevertheless, the Court must "remain within the non-movant's pleading" when deciding the Rule 12(c) motion. *Lively*, 6 F.4th at 305.

facing those [discovery] costs often calculate that it is efficient to settle a case even though they are convinced that they would win if the litigation continued").

Moreover, as both the parties recognize, *see* Def. Reply Br. at 6; Pl. Opp. at 15, the Court must resolve Defendants' motion for judgment on the pleadings by analyzing only Plaintiffs' allegations rather than looking to Defendants' Answer. *Lively*, 6 F.4th at 304. The answer may serve other purposes: It notifies Plaintiffs which of the twenty-one exemptions Defendants invoke, *cf. Cunningham*, 604 U.S. at 705 (addressing the concern that plaintiffs' must "plead and dispute myriad exceptions before knowing which of them the defendant will seek to invoke"), and also may inform the district court's decision to order a reply, *see, e.g.*, *Dalton v. Freeman*, No. 2:22-cv-00847, 2025 WL 3771345, at *2 (E.D. Cal. Dec. 31, 2025) (ordering a reply after recognizing the "clear, substantive factual allegations in support of [defendants'] affirmative defense"). But at this stage — once the Court has received Plaintiffs' Reply — the Court must focus on the plausibility of Plaintiffs' claims based only on Plaintiffs' allegations.

Ultimately, those allegations do not show that Caremark did not provide "other services necessary" for "more than reasonable compensation." 29 U.S.C. § 1108(b)(2)(A). Plaintiffs have failed to "put[] forward specific, nonconclusory factual allegations' showing" that § 1108(b)(2)(A)'s exemption for "does not apply." *Cunningham*, 604 U.S. at 708 (citation modified). Plaintiffs have therefore failed to state a prohibited transactions claim. Accordingly, the Court need not, and does not, address Defendants' remaining argument, *see* Def. Br. at 17-18, that ERISA's six-year statute of repose also bars Plaintiffs' claims. *See Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) ("ERISA's statute of repose is non-jurisdictional" (citing *Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883-88 (11th Cir. 2017))).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for judgment on the pleadings as to Counts Four and Five. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 55 and CLOSE the case.

Dated: November 23, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge